**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

KONATA MATTHEWS    )
                                       )    Civil Action No. 11 – 221J
            Plaintiff,          )
                                       )
        v.                          )    Chief Magistrate Judge Lisa Pupo Lenihan
                                       )
JEFFREY BEARD, *et al*.,   )
                                       )    ECF No. 18
            Defendants.      )


<u>**MEMORANDUM OPINION**</u>

Plaintiff, Konata Matthews ("Plaintiff") brings this action alleging that Defendants violated his rights under 42 U.S.C. § 1981, § 1983, and various state tort laws and state and federal criminal statutes.   Plaintiff has sued the following Defendants in their individual capacities:  Jeffrey Beard (former Secretary of the Pennsylvania Department of Corrections), Judy Smith (Superintendent's Assistant and Grievance Coordinator at SCI-Pine Grove), Susan Myers (CHCA at SCI-Pine Grove), T. Bearer (Correctional Food Service Manager at SCI-Pine Grove), Carol Zubur (Mail Inspector Supervisor at SCI-Pine Grove), Mark Thomas (Security Lieutenant at SCI-Pine Grove), E.D. Yeager (Correctional Officer at SCI-Houtzdale), and Jaime B. Boyd (Assistant Counsel of the Governor's Office of General Counsel).   Defendants have filed a Motion to Dismiss Plaintiff's Complaint.  (ECF No. 18.)   Although given an opportunity to file a response in opposition to Defendants' Motion or an Amended Complaint, Plaintiff did neither.  (ECF Nos. 20, 21, 22, 47, 48.)

**A. Plaintiff's Allegations**

Plaintiff alleges that on December 22, 2009, while he was exiting the cafeteria at SCI-Pine Grove, Defendant Bearer, the Food Service Manager, asked if Plaintiff was interested in working in Food Service. (ECF No. 3 at ¶ 16.) When Plaintiff said no, Defendant Bearer stated she was not interested in his employment but instead wanted to have sex with him. Id. Plaintiff states that he reported this incident the next day to Defendant Thomas, Security Lieutenant, and several days later Defendant Bearer approached Plaintiff stating that she hated him "with a passion" and that he had better watch what he eats because she was "gone [sic] prepare a special meal just for you you Islamic nigger." Id. at ¶¶ 17-18. The following day, Plaintiff filed a complaint against Defendant Bearer to the DOC's Office of Professional Responsibility ("OPR"). Id. at ¶ 19.

Plaintiff states that, after he was assaulted by three prisoners, he was placed in the infirmary on January 1, 2010, and on January 5, 2010, Defendant Myers, the CHCA, demanded that Plaintiff withdraw a grievance he had filed against the physician's assistant for denial of proper health care and making racial slurs. Id. at ¶¶ 20-21. When Plaintiff refused, Myers supposedly stated that Plaintiff was in for a "rude awakening" and called Plaintiff a "black bastard" saying "I hate you Muslims." Id. at ¶ 21. Plaintiff claims he filed a complaint with the OPR against Myers the next day. Id. at ¶ 22. He alleges that Myers approached him on January 11, 2010, and told him that the complaints to OPR "were faxed back to us you stupid ass Muslim. I got a hell of a dosage for you nigger." Id. at ¶ 23.

Plaintiff alleges that on January 12, 2010, Defendant Zubur delivered mail to the infirmary and handed Plaintiff his "Final Call" newspaper with a swastika drawn on it. Id. at ¶ 24.

On January 14, 2010, while still in the infirmary, Plaintiff told Defendant Myers that he had not received his breakfast tray and she told him that she would call for one.  Id. at ¶ 25. Defendant Bearer subsequently delivered a tray and took it to Defendant Myers' office instead of directly to Plaintiff.  Id.  A few minutes later, Defendant Bearer came out of Defendant Myers' office and handed the tray to Plaintiff, who immediately noticed some "tablets" mixed in with his Rice Krispies cereal.  Id.  The next day, Plaintiff sent five of the nine tablets from his cereal to a nurse who told him they were nitroglycerin tablets.  Id. at ¶ 26.  After explaining that they had been mixed in his food the previous day, the nurse informed him that she would contact the security office.  Id.

On January 17, 2010, Defendant Thomas visited Plaintiff in the infirmary to review the swastika and the nitroglycerin tablets.  Id. at ¶ 27.  Plaintiff states he gave Defendant Thomas the drawing, five of the nine tablets, and a grievance regarding both matters, and Thomas said all the evidence would be held in the security office for investigation.  Id.

Plaintiff filed a motion for a temporary restraining order in a pending case in the Middle District of Pennsylvania[1] regarding the swastika drawing and the nitroglycerin tablets, and he requested that he be transferred to another facility.  Id. at ¶ 29.  Plaintiff states that he attached the tablets "as evidence," but that they were returned to him by the Clerk's office the following day.  Id. at ¶ 30.  On February 8, 2010, Defendant Boyd filed a brief in opposition to Plaintiff's motion for temporary restraining order containing, among other things, declarations from Defendants Thomas, Smith, and Myers stating that Plaintiff's allegations were fabricated.  Id. at ¶ 31.

---

[1]        Matthews v. Beard et al., No. 09-2234

Plaintiff alleges that he received another "Final Call" newspaper with a swastika drawn on it, this time from Defendant Myers on February 15, 2010. Id. at ¶ 32. On February 19, 2010, Defendant Bearer delivered his lunch tray on which there was an envelope folded up inside his Styrofoam cup, addressed to Plaintiff with a "happy face" sticker. Id. at ¶ 33. Plaintiff claims the envelope contained a "death threat" which said "we kill rat-coons." Id. at ¶ 33. Plaintiff says he "positively identified" the handwriting as Defendant Bearer's. Id. Plaintiff claims that Defendant Zubur delivered mail to the infirmary on March 2, 2010, and as she handed him his "Final Call" newspaper with another swastika drawn on it she allegedly stated "you black ass Muslim monkeys better stop referring to us whites as devils in this sinful paper." Id. at ¶ 34.

Plaintiff claims he sent a grievance to Defendant Smith on March 3, 2010, which covered, among other things, the nitroglycerin tablets, the swastikas on his papers, and the "death threat" from Defendant Bearer. Id. at ¶ 35. Plaintiff states that Defendant Smith responded on July 1, 2010, and rejected his grievance as untimely. Id.

Plaintiff was placed in the Restricted Housing Unit ("RHU") on March 5, 2010, and on March 8, 2010, Defendant Zubur delivered his mail. Id. at ¶¶ 36-37. He claims that all three pieces of his mail had confederate flag stickers on them and the mail from the PA Institutional Law Project had the phrase "die coon we hate Muslims" written on it. Id. at ¶ 37. Plaintiff states that he later identified the handwriting as that of Defendant Smith. Id. According to Plaintiff, he filed a grievance about this incident on March 9, 2010, but Defendant Smith rejected it as untimely. Id. at ¶ 38.

Plaintiff was transferred to SCI-Houtzdale on March 10, 2010. Id. at ¶ 39. He filed another complaint with OPR raising the issues with the nitroglycerin tablets, his newspaper, and mail, and on July 26, 2010, OPR advised Plaintiff that his allegations of abuse had been

thoroughly investigated by the Security Department at SCI-Pine Grove and had been determined to be unfounded. Id. at ¶¶ 40-41.

Plaintiff alleges that on March 9, 2011, he returned to his cell to find his "Final Call" newspaper delivered with a Ku Klux Klan sticker on it accompanied by certain racially discriminatory statements. Id. at ¶ 44. Plaintiff claims to have "positively identified" the handwriting on the newspaper as that of Defendant Yeager. Id. Plaintiff filed a complaint to OPR regarding the incident on March 11, 2011. Id. at ¶ 45.

## B. Legal Standard

When considering a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), courts must accept all factual allegations in the complaint as true and read them in the light most favorable to the plaintiff. Angelastro v. Prudential-Bache Securities, Inc., 764 F.2d 939, 944 (3d Cir. 1985). A complaint must be dismissed pursuant to Rule 12(b)(6) if it does not allege "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 554, 556 (2007). "Factual allegations must be enough to raise a right to relief above a speculative level." Id. at 555. The court need not accept inferences drawn by the plaintiff if they are unsupported by the facts as set forth in the complaint. See California Pub. Employee Ret. Sys. v. The Chubb Corp., 394 F.3d 126, 143 (3d Cir. 2004) (citing Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997)). Nor must the court accept legal conclusions set forth as factual allegations. Bell Atlantic Corp., 550 U.S. at 555 (citing Papasan v. Allain, 478 U.S. 265, 286 (1986)). Additionally, a civil rights claim "must contain specific allegations of fact which indicate a deprivation of constitutional rights; allegations which are nothing more than broad, simple and conclusory statements are insufficient to state a claim under § 1983." Alfaro Motors, Inc. v. Ward, 814 F.2d 883, 887 (2d Cir. 1987).

Courts generally consider the allegations of the complaint, attached exhibits, and matters of public record in deciding motions to dismiss. Pension Benefit Guar. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993). Factual allegations within documents described or identified in the complaint also may be considered if the plaintiff's claims are based upon those documents. Id. (citations omitted). Moreover, a district court may consider indisputably authentic documents without converting a motion to dismiss into a motion for summary judgment. Spruill v. Gills, 372 F.3d 218, 223 (3d Cir. 2004); In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997).

Finally, a court must employ less stringent standards when considering *pro se* pleadings than when judging the work product of an attorney. Haines v. Kerner, 404 U.S. 519, 520 (1972). When presented with a *pro se* complaint, the court should construe the complaint liberally and draw fair inferences from what is not alleged as well as from what is alleged. Dluhos v. Strasberg, 321 F.3d 365, 369 (3d Cir. 2003). In a section 1983 action, the court must "apply the applicable law, irrespective of whether the *pro se* litigant has mentioned it by name." Higgins v. Beyer, 293 F.3d 683, 688 (3d Cir. 2002) (quoting Holley v. Dep't of Veteran Affairs, 165 F.3d 244, 247-48 (3d Cir. 1999)). *See also* Nami v. Fauver, 82 F.3d 63, 65 (3d Cir. 1996) ("Since this is a § 1983 action, the [pro se] plaintiffs are entitled to relief if their complaint sufficiently alleges deprivation of any right secured by the Constitution.") (quoting Higgins, 293 F.3d at 688). Notwithstanding this liberality, *pro se* litigants are not relieved of their obligation to allege sufficient facts to support a cognizable legal claim. *See*, *e.g.*, Taylor v. Books A Million, Inc., 296 F.3d 376, 378 (5th Cir. 2002); Riddle v. Mondragon, 83 F.3d 1197, 2102 (10th Cir. 1996).

**C. Analysis**

Plaintiff raises the following fifteen claims for relief: (1) racial intimidation and harassment (Count 1), (2) religious and malicious harassment (Count 2), (3) civil conspiracy (Count 3), (4) violation of the Pennsylvania Hate Crimes Act, 18 Pa. C.S. § 2709 *et seq* (Count 4), (5) violation of the Federal Anti-Terrorism Act, 18 U.S.C. § 2331 (Count 5), (6) intentional infliction of emotional distress (Count 6), (7) aiding and abetting intentional or reckless infliction of emotional distress (Count 7), (8) outrage (Count 8), (9) negligence (Count 9), (10) gross negligence (Count 10), (11) negligent infliction of emotional distress (Count 11), (12) liability under the Anti-Terrorism Act (Count 12), (13) liability for intentional or reckless infliction of emotional distress (Count 13), (14) supervisor liability (Count 14), and (15) civil liability (Count 15).

**1. Counts 1 and 2 – Racial and Religious Harassment**

Plaintiff asserts that he was subjected to racial and religious slurs and threats made verbally and in writing by Defendants Bearer, Myers, Zubur, Smith and Yeager. He also asserts that Defendant Bearer's handing him a tray with nitroglycerine tablets in his cereal and Myers, Zubur and Yeager handing him newspapers and mail with swastikas and confederate stickers on them, constituted racial and religious harassment. Plaintiff brings his claims pursuant to 42 U.S.C. § 1981.

*a. 42 U.S.C. § 1981*

Section 1981 "protects the equal right of citizens to make and enforce contracts without regard to race." <u>Whaumbush v. City of Phila.</u>, 747 F. Supp. 2d 505, 518 (E.D. Pa. Oct. 15, 2010). To state a claim under § 1981, Plaintiff must allege (1) that he is a member of a racial minority; (2) an intent to discriminate on the basis of race by the Defendants; and (3)

discrimination concerning an activity enumerated in the statute, which includes the right to make and enforce contracts. <u>Brown v. Phillip Morris, Inc.</u>, 250 F.3d 789, 797 (3d Cir. 2001).

To the extent Plaintiff brings a claim under § 1981, his claim fails since he has not identified "an impaired contractual relationship under which [he] has rights." <u>Whaumbush</u>, 747 F. Supp. 2d at 518. Plaintiff does not allege, nor can he, that he had rights in any contract and that Defendants impaired his rights under a contract or blocked the creation of a contract through racial discrimination. *See* <u>id</u>. at 519. Thus, to the extent Plaintiff brings his religious and racial harassment claims in Counts 1 and 2 under § 1981, they are dismissed with prejudice.

    *b.  42 U.S.C. § 1983*

To the extent Plaintiff attempts to raise a claim of verbal harassment, his claim is not actionable. Assuming Plaintiff's allegations are true, it is well-settled that the use of words alone, no matter how violent, do not amount to a constitutional violation under § 1983. *See* <u>Burkholder v. Newton</u>, 116 F. App'x 358, 360 (3d Cir. 2004); <u>DeWalt v. Carter</u>, 224 F.3d 607, 612 (7th Cir. 2000); <u>McFadden v. Lucas</u>, 713 F.2d 143, 146 (5th Cir.) ("mere threatening language and gestures of a custodial office[r] do not, even if true, amount to constitutional violations"), *cert. denied*, 464 U.S. 998 (1983); <u>Wilson v. Horn</u>, 971 F. Supp. 943, 948 (E.D. Pa. 1997) (verbal abuse and harassment, although not commendable, does not rise to the level of a constitutional violation), *aff'd*, 142 F.3d 430 (Table) (3d Cir. 1998); <u>Maclean v. Secor</u>, 876 F. Supp. 695, 698 (E.D. Pa. 1995) (threat by BOP guard to "see to it" that "pieces of s-" like plaintiff would be "taken care of" was not adequate to make out a constitutional claim as "[i]t is well-established that verbal harassment or threats . . . will not, without some reinforcing act accompanying them, state a constitutional claim").

Moreover, religious and racially discriminatory statements, racial slurs and epithets, without more, also do not establish liability under § 1983. *See* DeWalt, 224 F.3d at 612 ("The use of racially derogatory language, while unprofessional and deplorable, does not violate the Constitution."); Williams v. Bramer, 180 F.3d 699, 706 (5th Cir. 1999) ("[A]n officer's use of a racial epithet, without harassment or some other conduct that deprives the victim of established rights, does not amount to an equal protection violation."); Freeman v. Arpaio, 125 F.3d 732, 738 (9th Cir. 1997) (verbal abuse directed at religious and ethnic background does not state a cognizable constitutional violation); Black Spotted Horse v. Else, 767 F.2d 516, 517 (8th Cir. 1985); Shabazz v. Cole, 69 F. Supp. 2d 177, 201 (D. Mass 1999) ("verbal threats, even abusive threats with racial epithets, do not, in the context of prison, violate an inmate's constitutional rights"); Prisoners' Legal Ass'n v. Roberson, 822 F. Supp. 185, 187-89 & n.3 (D. N.J. 1993) (corrections officer's use of racial slurs did not amount to constitutional violation); Wright v. Santoro, 714 F. Supp. 665, 667 (S.D. N.Y. 1989), *aff'd*, 891 F.2d 278 (2d Cir. 1989); Morgan v. Ward, 699 F. Supp. 1025, 1055 (N.D. N.Y. 1988) (use of racial slurs do not support a claim under the Eighth Amendment); Williams v. Pecchio, 543 F. Supp. 878, 879 (W.D. N.Y. 1982) (verbal harassment, including the use of the term "nigger," does not support a Section 1983 claim). Thus, however offensive the language used by Defendants, it does not give rise to a constitutional claim by itself, and to the extent Plaintiff's claims are based upon verbal harassment and threats alone, his claims are dismissed with prejudice.

Nevertheless, the use of an epithet or derogatory language is strong evidence that conduct or action is racially motivated. DeWalt, 224 F.3d at 612, n.3 ("Thus, although the use of racially derogatory language, by itself, does not violate the Constitution, it can be quite important evidence of a constitutional violation.") The question in the equal protection context, however,

is not just whether the conduct is racially motivated but also whether that action deprives a person of "equal protection of the laws."  U.S. Const. amend. XIV.  Where the conduct at issue consists solely of speech, there is no equal protection violation.

At present, Plaintiff's Complaint fails to state a claim against Defendants for a violation of his equal protection rights.  The Court finds, however, that amendment of Plaintiff's Complaint may not necessarily be futile as he may be able to assert an equal protection claim if he is able to show purposeful discrimination on the basis of Plaintiff's membership in a suspect class.  Therefore, while the Court expresses no opinion as to the merits of such a claim at this time, Plaintiff will be permitted to file an Amended Complaint to assert such a claim if he so desires.[2]

## 2.  Count 3 – Conspiracy

Plaintiff asserts that Defendants Boyd, Thomas, Smith, and Myers conspired to "cover-up hate crimes" by fabricating court papers and withholding evidence in connection with his case pending in the Middle District of Pennsylvania.  Plaintiff also asserts that Defendants Bearer and Myers conspired to mix the nitroglycerin tablets in his cereal and that Defendants Bearer, Myers, Smith, and Zubur conspired to racially harass and intimidate him.  Defendants argue that Plaintiff's conspiracy claim should be dismissed because his allegations of conspiracy are insufficient to establish a claim.

In order to set forth a § 1983 cognizable conspiracy claim, a plaintiff cannot rely on broad or conclusory allegations.  D.R. by L.R. v. Middle Bucks Area Vocational Technical Sch.,

---

[2]      The Court is mindful of the fact that *pro se* pleadings are to be construed liberally, Haines v. Kerner, 404 U.S. 519, 520 (1972), and *pro se* litigants are to be granted leave to file a curative complaint even when they do not seek leave to do so, "unless an amendment would be inequitable or futile." Alston v. Parker, 363 F.3d 229, 235 (3d Cir. 2004). However, a complaint that sets forth facts which affirmatively demonstrate that the plaintiff has no right to recover is properly dismissed without leave to amend. Grayson v. Mayview State Hospital, 293 F.3d 103, 108 (3d Cir. 2002).

972 F.2d 1364, 1377 (3d Cir. 1992); Rose v. Bartle, 871 F.2d 331, 366 (3d Cir. 1989). The Third Circuit has noted that a civil rights conspiracy claim is sufficiently alleged if the complaint details the following: (1) the conduct that violated the plaintiff's rights; (2) the time and the place of the conduct; and (3) the identity of the officials responsible for the conduct. Oatess v. Sobolevitch, 914 F.2d 428, 432 n.8 (3d Cir. 1990).

The essence of a conspiracy is an agreement or concerted action between individuals. *See* D.R. by L.R., 972 F.2d at 1377. A plaintiff must therefore allege with particularity and present material facts which show that the purported conspirators reached some understanding or agreement or plotted, planned and conspired together to deprive plaintiff of a protected federal right. *See* D.R. by L.R., 972 F.2d at 1377; Rose, 871 F.2d at 366. Where a civil rights conspiracy is alleged, there must be specific facts in the complaint which tend to show a meeting of the minds and some type of concerted activity. Deck v. Leftridge, 771 F.2d 1168, 1170 (8th Cir. 1985). A plaintiff cannot rely on subjective suspicions and unsupported speculation. Young v. Kann, 926 F.2d 1396, 1405, n.16 (3d Cir. 1991).

In the present case, Plaintiff has failed to allege any facts that plausibly suggest a meeting of the minds between any of the Defendants. Beyond his bald and conclusory statements that Defendants engaged in a conspiracy to violate his rights, Plaintiff alleges no facts that, if true, would plausibly lead to the conclusion that an agreement or plan to achieve a conspiracy actually existed and was executed by any of the Defendants. Because Plaintiff's factual allegations, even if true, fail to establish an agreement between Defendants to violate Plaintiff's constitutional rights, his conspiracy claims will be dismissed. However, as it is not clear that leave to amend this claim would necessarily be futile, dismissal will be without prejudice and Plaintiff will be permitted to file an Amended Complaint to correct this deficiency if he is so able.

### 3. Counts 4, 5, and 12 – Criminal Statutes

Plaintiff alleges that various Defendants violated state and federal criminal statutes. However, these are criminal statutes which do not create a private right of action, and "a private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another." Linda R.S. v. Richard D., 410 U.S. 614, 619 (1973). Accordingly, these Counts are hereby dismissed with prejudice.

### 4. Counts 6-11, 13  - Pennsylvania State Tort Law Claims

Plaintiff alleges several causes of action under Pennsylvania state law. These consist of the following: intentional infliction of emotional distress (Counts 6 and 13), aiding and abetting intentional or reckless infliction of emotional distress (Count 7), outrage (Count 8), negligence (Count 9), gross negligence (Count 10), and negligent infliction of emotional distress (Count 11).

Defendants assert that these claims are barred by the doctrine of sovereign immunity. The doctrine of sovereign immunity bars claims that are asserted against the Commonwealth, its agencies, and Commonwealth employees acting within the scope of their office or employment. See Mitchell v. Luckenbill, 680 F. Supp. 2d 672, 681-82 (M.D. Pa. 2010) (citing 1 Pa. C.S. § 2310.) The Pennsylvania General Assembly has provided nine specific exceptions to the general grant of immunity that relate to: (1) vehicle liability; (2) medical-professional liability; (3) care, custody or control of personal property; (4) Commonwealth real estate, highways and sidewalks; (5) potholes and other dangerous conditions; (6) care, custody or control of animals; (7) liquor store sales; (8) National Guard activities; and (9) toxoids and vaccines. See Pa. 42 C.S. § 8522.

Plaintiff's state tort claims do not fall within one of the specific exceptions to sovereign immunity. Moreover, it is well-established that sovereign immunity applies to intentional torts as well as negligent torts provided the defendant is acting within the scope of his or her

employment. *See* <u>Stone v. Felsman</u>, No. 3:10-0442, 2011 U.S. Dist. LEXIS 125909, 2011 WL 5320738, at *11 (M.D. Pa. Nov. 1, 2011) (collecting cases). There is nothing in Plaintiff's allegations to suggest that Defendants were not acting within the scope of their employment when the alleged acts occurred. Indeed,

> Under Pennsylvania law, an action falls within the scope of employment if it: (1) is the kind that the employee is employed to perform; (2) occurs substantially within the job's authorized time and space limits; (3) is motivated at least in part by a desire to serve the employer; and (4) if force was used by the employee against another, the use of force is not unexpectable by the employer.

<u>Wesley v. Hollis</u>, No. 03-3130, 2007 U.S. Dist. LEXIS 41562, 2007 WL 1655483, at *14 (E.D. Pa. June 6, 2007). "[W]illful misconduct does not vitiate a Commonwealth employee's immunity if the employee is acting within the scope of his employment, including intentional acts which cause emotional distress." <u>Cooper v. Beard</u>, No. 06-171, 2006 U.S. Dist. LEXIS 80655, 2006 WL 3208783, at *16 (E.D. Pa. Nov. 2, 2006). The actions taken by Defendants were actions that were taken in their capacity as Commonwealth employees and not as private individuals. Because the record clearly supports the conclusion that Defendants were acting within the scope of their employment when the acts were allegedly committed, they are immune from liability on state law causes of action and these Counts will be dismissed accordingly.

**5. Count 14 – Supervisor Liability**

Plaintiff alleges that Defendant Bearer failed to properly supervise his breakfast tray, Defendant Myers failed to properly supervise his medicine, and Defendant Zubur failed to properly supervise the mail.

"A defendant in a civil rights action must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of *respondeat superior*." <u>Rode v. Dellarciprete</u>, 845 F.2d 1195, 1207 (3d Cir. 1988). The Court of Appeals for the Third Circuit

has explained that there are several potential theories of supervisory liability, although the terminology used to describe such theories is not always consistent. *See* Argueta v. U.S. Immigration & Customs Enforcement, 643 F.3d 60, 71 (3d Cir. 2011); Santiago v. Warminster Twp., 629 F.3d 121, 129 n.5 (3d Cir. 2010).

First, supervisors may be liable if, with deliberate indifference to the consequences, they "established and maintained a policy, practice or custom which directly caused the constitutional harm." Santiago, 629 F.3d at 129 n.5; A.M. ex rel. J.M.K. v. Luzerene Cty. Juvenile Detention Ctr., 372 F.3d 572, 586 (3d Cir. 2004). Second, supervisory liability may attach if the supervisor "participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in his subordinates' violations." Id. (citing A.M., 372 F.3d at 586). To impose liability, there must be both (1) contemporaneous knowledge of the offending incident or knowledge of a prior pattern of similar incidents, and (2) circumstances under which the supervisor's assertion could be found to have communicated a message of approval to the offending subordinate. Colburn v. Upper Darby Twp., 838 F.2d 663, 673 (3d Cir. 1988).

Here, the Court finds that Plaintiff has not stated a claim of supervisor liability against Defendants Bearer, Myers, or Zubur. Specifically, Plaintiff does not allege that Defendants failed to establish a policy, practice or custom which caused the violation and, most importantly, he does not allege that Defendants acted in a supervisory capacity to another who violated Plaintiff's rights. Instead, it appears as if Plaintiff alleges that Defendants personally violated his constitutional rights by specifically engaging in the wrongful acts. As such, Plaintiff's claims of supervisor liability against these Defendants will be dismissed with prejudice. However, to the

extent he is able and desires to do so, Plaintiff is given leave to amend his complaint to state claims against these Defendants for their personal involvement in the alleged wrongs.

### 6. Count 15 – Civil Liability

Plaintiff claims that Defendants are civilly liable for their various wrongdoings. As an initial matter, Plaintiff does not state, and the Court cannot decipher, under which law he is seeking to impose civil liability upon Defendants. Thus his claim falls short of the standard set forth in Ashcroft v. Iqbal, 556 U.S. 662 (2009) and Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007).

Nevertheless, with the exception of Plaintiff's allegations against Defendants Thomas and Beard, the Court finds that Plaintiff's claims asserted in this Count (although not specifically identified) against Defendants Boyd, Thomas, Smith, Myers, Bearer, Zubur, and Yeager are identical and duplicative of claims already addressed in this Memorandum Opinion. As such, the Court declines to address these claims again and holds that they are hereby disposed of in the manner in which they are addressed *supra*. To the extent, however, he is seeking to impose liability under some other law not addressed herein, Plaintiff is permitted to amend his Complaint to identify each claim by name and state under what law he is bringing such claim.

The Court will address Plaintiff's allegations against Defendants Thomas and Beard contained in this Count. Specifically, he claims that they are liable for failing to take disciplinary action against prison officials for their bad acts, namely drawing the swastika on his newspaper and mixing nitroglycerin tablets in his cereal, after learning of this behavior through Plaintiff's motion for TRO filed in connection with his case pending in the Middle District of Pennsylvania. Defendants claim that Plaintiff has failed to show the requisite personal involvement necessary to state a claim against these two Defendants.

As stated above, in order to establish personal liability under section 1983, "[a] defendant must have personal involvement in the alleged wrongs; liability cannot be predicated on the operation of *respondeat superior*." Rode, 845 F.2d at 1207; *see also* Rizzo v. Goode, 423 U.S. 362 (1976). Accordingly, individual liability can be imposed under section 1983 only if the state actor played an "affirmative part" in the alleged misconduct. Rode, 845 F.2d at 1207; Chinchello v. Fenton, 805 F.2d 126, 133 (3d Cir. 1986). "Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." Rode, 845 F.2d at 1207-08; *see also* Keenan v. Philadelphia, 983 F.2d 459, 466 (3d Cir. 1992); Andrews v. Philadelphia, 895 F.2d 1469, 1478 (3d Cir. 1990).

Moreover, a supervising public official has no affirmative constitutional duty to supervise and discipline so as to prevent violations of constitutional rights by his or her subordinates. Notwithstanding, when a supervising official knowingly permits a continuing custom or policy that results in harm to the plaintiff, 1983 liability may attach. Colburn v. Upper Darby Township, 838 F.2d 663, 673 (3d Cir. 1988), *cert. denied*, 489 U.S. 1065 (1989). In order to maintain a claim for supervisory liability, a plaintiff must show: (1) that the supervising official personally participated in the activity; (2) that the supervising official directed others to violate a person's rights; or (3) that the supervising official had knowledge of and acquiesced in a subordinate's violations. *See* Robinson v. City of Pittsburgh, 120 F.3d 1286, 1293 (3d Cir. 1997); Baker v. Monroe Twp., 50 F.3d 1186, 1190-91 (3d Cir. 1995); *see also* Montgomery v. De Simone, 159 F.3d 120, 127 (3d Cir. 1998) (In order to prevail on a failure to train, discipline or control claim, a plaintiff must "show both contemporaneous knowledge of the offending incident or knowledge of a prior pattern of similar incidents and circumstances under which the

supervisor's actions or inaction could be found to have communicated a message of approval to the offending subordinate.") (citations omitted).

Here, Plaintiff alleges that Defendants Beard and Thomas knew, or should have known, about the wrongdoing concerning the swastika and nitroglycerin tablets and failed to take disciplinary action against the perpetrating Defendants. Plaintiff's allegations are, as a matter of law, insufficient to constitute the requisite direct personal involvement in Plaintiff's injuries. Such action or inaction which, concededly occurred only after the alleged constitutional violations had already occurred, cannot be said to have been the "cause" of Plaintiff's constitutional injuries. Without such causation there can be no liability. *See*, *e.g.*, <u>Ricker v. Weston</u>, 27 F. App'x 113, 119 (3d Cir. 2002) ("This decision not to discipline the officers does not amount to active involvement in appellee's injuries given that all of the injuries occurred before the decision."). Moreover, Plaintiff has not made any factual showing that Defendants Beard and Thomas had personal knowledge of or participated in the alleged deprivation of Plaintiff's constitutional rights. Specifically, Plaintiff does not allege any facts indicating that Defendants Beard and Thomas personally participated in the alleged wrongdoing or had contemporaneous, personal knowledge of the misconduct, and acquiesced in or somehow approved it. Accordingly, Plaintiff's Complaint will be dismissed as to Defendants Beard and Thomas. Moreover, as it is clear from the record that any attempt to amend in this regard would be futile, such dismissal will be with prejudice.

### 7. Defendant Boyd

Plaintiff's allegations against Defendant Boyd are in connection with Boyd's legal representation of the defendants in Plaintiff's case pending in the Middle District of Pennsylvania. As Defendants point out, Defendant Boyd is not a state actor for purposes of

imposing liability under section 1983.  *See* <u>Briscoe v. LaHue</u>, 460 U.S. 325, 330 n.6 (1983) ("Thus, even though the defective performance of defense counsel may cause the trial process to deprive an accused person of his liberty in an unconstitutional manner, the lawyer who may be responsible for the unconstitutional state action does not himself act under color of state law within the meaning of § 1983.  This conclusion is compelled by the character of the office performed by defense counsel.") (internal citations omitted).

Moreover, Defendant Boyd is entitled to absolute immunity from damages with respect to his actions in defending DOC personnel in lawsuits initiated by Plaintiff.  In this regard, in a limited number of circumstances, government officials are entitled to absolute immunity from a suit for damages.  <u>Buckley v. Fitzsimmons</u>, 509 U.S. 259, 269 (1993).  The grant of absolute immunity from suit extends to official functions in which the exposure to liability would invariably impede the official in the performance of his or her duties.  <u>Forrester v. White</u>, 484 U.S. 219, 223-24 (1988).

Judges generally are accorded immunity in the performance of "truly judicial acts" performed within their lawful jurisdiction.  <u>Mireles v. Waco</u>, 502 U.S. 9 (1991); <u>Forrester</u>, 484 U.S. at 226-27.  Like judges, certain other specified officials, such as administrative law judges, and federal and state prosecutors, enjoy absolute immunity in the performance of functions that are "closely associated with the judicial process."  <u>Cleavinger v. Saxner</u>, 474 U.S. 193, 200 (1985).  This immunity shields not only these decisionmakers, but also other individuals who perform discretionary tasks that play an integral part in the decisionmaking process.  <u>Id</u>.  Thus, where the official's responsibilities are closely analogous to the adjudicative functions of a judge, or are intimately associated with the judicial process itself, that official may enjoy

absolute immunity from suit for actions taken to fulfill those particular responsibilities. <u>Buckley</u>, 509 U.S. at 271.

In <u>Butz v. Economou</u>, 438 U.S. 478, 512 (1978), the Supreme Court mentioned the following factors as characteristic of the judicial process and to be considered in determining absolute immunity: (1) the need to assure that the individual can perform his functions without harassment or intimidation; (2) the presence of safeguards that reduce the need for private damages actions as a means of controlling unconstitutional conduct; (3) insulation from political influence; (4) the importance of precedent; (5) the adversary nature of the process; and (6) the correctability of error on appeal. In that case, the Supreme Court concluded that an agency attorney who had arranged for the presentation of evidence in the course of an adjudication was absolutely immune from suit. <u>Butz</u>, 438 U.S. at 516-17. In so concluding, the Court reasoned that agency lawyers are entitled to absolute immunity from suit as they are restrained not only by their professional obligations, but by the knowledge that their assertions will be contested by their adversaries in open court. <u>Id</u>.

Here, Plaintiff's allegations against Defendant Boyd relate solely to his actions in representing DOC defendants in Plaintiff's lawsuit initiated in the Middle District of Pennsylvania. Defendant Boyd is entitled to absolute immunity from damages with respect to his actions in litigating and defending DOC defendants in those civil rights actions. Accordingly, Plaintiff's Complaint will be dismissed with prejudice against him and he will be terminated from this action.

### D. Conclusion

For the foregoing reasons, Defendant's Motion to Dismiss is granted as follows:

1.  Counts 1-2 are dismissed with prejudice to the extent Plaintiff brings his claims pursuant to 42 U.S.C. § 1981. These Counts are also dismissed with prejudice to the extent Plaintiff's claims are based upon verbal harassment and threats because offensive language alone does not give rise to a constitutional claim by itself. However, Plaintiff is granted leave to file an Amended Complaint in accordance with the findings contained in section C(1)(b) of this Memorandum Opinion.

2.  Count 3 is dismissed without prejudice and Plaintiff is granted leave to file an Amended Complaint to correct the deficiencies outlined in section C(2) of this Memorandum Opinion.

3.  Counts 4, 5 and 12 are dismissed with prejudice as criminal statutes do not create a private right of action.

4.  Plaintiff's state law claims contained in Counts 6-11 and 13 are dismissed with prejudice because Defendants are entitled to sovereign immunity and the record is clear that they were acting within the scope of their employment when the alleged violations occurred.

5.  Plaintiff's claims of supervisory liability contained in Count 14 are dismissed with prejudice. However, Plaintiff is permitted to file an Amended Complaint in accordance with the findings contained in section C(5) of this Memorandum Opinion.

6.  Plaintiff's claims of civil liability contained in Count 15 against Defendants Boyd, Thomas, Smith, Myers, Bearer, Zubur, and Yeager are dismissed because they are deficient as plead. Additionally, Plaintiff's claims against these Defendants in this Count are duplicative of claims previously addressed and are disposed of in the manner in which they are addressed elsewhere in this Memorandum Opinion. To the extent, however, he is seeking to impose liability under some other law not addressed herein, Plaintiff is permitted to file an Amended Complaint in accordance with the findings contained in section C(6) of this Memorandum

Opinion. If he chooses to do so, he should identify each claim by name and state under what law he is bringing such claim.

7. Plaintiff's failure to discipline claims against Defendants Thomas and Beard contained in Count 15 are dismissed with prejudice for failure to state a claim as it is clear that any attempt on Plaintiff's part to amend would be futile.

8. Plaintiff's Complaint is dismissed in its entirety against Defendant Boyd as he is not a state actor and entitled to absolute immunity, and Defendant Boyd will be terminated from this action.

An appropriate Order will follow.

Dated: June 14, 2012

Lisa Pupo Lenihan
Chief United States Magistrate Judge

cc: Konata Matthews
EL-4568
SCI Houtzdale
P.O. Box 1000
Houtzdale, PA 16698

Counsel of Record