IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| KONATA MATTHEWS, | ) | |
| | ) | Civil Action No. 11 – 221J |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Chief Magistrate Judge Lisa Pupo Lenihan |
| | ) | |
| JEFFREY BEARD, *et al.*, | ) | |
| | ) | ECF No. 52 |
| Defendants. | ) | |
| | ) | |
| | ) | |

**MEMORANDUM ORDER**

Pending before the Court is a Motion for Temporary Restraining Order and Preliminary Injunction (ECF No. 52) filed by *pro se* Plaintiff, Konata Matthews, an inmate currently incarcerated at the State Correctional Institution at Houtzdale ("SCI-Houtzdale"). For the following reasons, the Motion will be denied.

**I. Background**

By way of background, Plaintiff's Complaint in this matter was filed on September 30, 2011. (ECF No. 3.) Plaintiff alleged that Defendants violated his rights under 42 U.S.C. § 1981, § 1983, and various state tort laws and state and federal criminal statutes. Plaintiff sued the following Defendants in their individual capacities: Jeffrey Beard (former Secretary of the Pennsylvania Department of Corrections), Judy Smith (Superintendent's Assistant and Grievance Coordinator at SCI-Pine Grove), Susan Myers (CHCA at SCI-Pine Grove), T. Bearer (Correctional Food Service Manager at SCI-Pine Grove), Carol Zubur (Mail Inspector

1

Supervisor at SCI-Pine Grove), Mark Thomas (Security Lieutenant at SCI-Pine Grove), E.D. Yeager (Correctional Officer at SCI-Houtzdale), and Jaime B. Boyd (Assistant Counsel of the Governor's Office of General Counsel). Defendants filed a Motion to Dismiss (ECF No. 18) and although Plaintiff was given the opportunity to file a response in opposition to Defendants' Motion or an Amended Complaint, he did neither (ECF Nos. 20, 21, 22, 47, 48). On June 14, 2012, the Court granted Defendants' Motion to Dismiss but allowed Plaintiff to file an Amended Complaint with respect to several of his claims. (ECF Nos. 49, 50.) Plaintiff filed an Amended Complaint on July 13, 2012, along with the current Motion for TRO and Preliminary Injunction. (ECF Nos. 51, 52.)

In Plaintiff's Motion, he states that on April 23, 2012, he gave his Amended Complaint to Doretta Chencharick, the Superintendent's Assistant, so that she could mail it to the Court in accordance with this Court's instructions in the video conference hearing held on April 6, 2012. (ECF No. 52 at ¶ 1); *see* ECF No. 47. Plaintiff, however, states that Ms. Chencharick did not do so out of retaliation for filing a grievance against her on April 17, 2012. (ECF No. 52 at ¶ 1.) On May 9, 2012, Plaintiff filed a grievance against Ms. Chencharick for either shredding or throwing his Amended Complaint in the trash. Id.

Over a month later, on June 14, 2012, Plaintiff claims that he was escorted from the Restricted Housing Unit ("RHU") to the Security Office where Captain Brumbaugh, Lieutenant Shea, Lieutenant Horton and Deputy Close demanded that he withdraw the grievance he had filed against Ms. Chencharick. Id. at ¶ 2. After he refused to do so, Plaintiff claims that Deputy Close shoved his head into the office door, kicked him, spit in his face, and called him a "black bastard." Id. Then he claims that Captain Brumbaugh, Lt. Shea, and Lt. Horton took turns hitting, kicking, and spitting on him while uttering racial slurs and death threats. Id. Finally, he

2

claims that Captain Brumbaugh, Lt. Shea, and Lt. Horton then held him while Deputy Close choked and raped him. Id. Plaintiff claims that he is being held in the RHU based on fabricated misconduct reports, presumably pertaining to this incident. Id. at ¶ 3. He seeks a TRO against Captain Brumbaugh, Lt. Shea, Lt. Horton, and Deputy Close. (ECF No. 52-1.) He requests a Court order that they "stop committing racially motivated hate crimes through assaults, torture, rape, and death threats in retaliation for petitioning the government for redress." (ECF No. 52-1.)

## II. Applicable Legal Standards

This Court has discretion to grant preliminary injunctive relief under Federal Rule of Civil Procedure 65. The party seeking a preliminary injunction has the burden of demonstrating: (1) a reasonable probability of success on the merits; (2) irreparable harm if the injunction is denied; (3) that the issuance of an injunction will not result in greater harm to the non-moving party; and (4) that the public interest would best be served by granting the injunction. Council of Alternative Political Parties v. Hooks, 121 F.3d 876, 879 (3d Cir. 1997); Clean Ocean Action v. York, 57 F.3d 328, 331 (3d Cir. 1995); Opticians Ass'n of America v. Independent Opticians of America, 920 F.2d 187, 191-92 (3d Cir. 1990). The Court should issue the injunction only if the movant produces evidence sufficient to convince the trial judge that all four factors favor preliminary relief. Opticians, 920 F.2d at 192 (citing ECRI v. McGraw-Hill, Inc., 809 F.2d 223, 226 (3d Cir. 1987)).

The purpose of the preliminary injunction is to preserve the *status quo* until the rights of the parties can be fairly and fully litigated and determined by strictly legal proofs and according to the principles of equity. Wetzel v. Edwards, 635 F.2d 283, 286 (4th Cir. 1980). Thus, the grant of injunctive relief is an "extraordinary remedy which should be granted only in limited

circumstances." American Telephone & Telegraph Co. v. Winback and Conserve Program, Inc., 42 F.3d 1421 (3d Cir. 1994) (quoting Frank's GMC Truck Center, Inc. v. General Motor Corp., 847 F.2d 100, 102 (3d Cir. 1988)), *cert. denied*, 514 U.S. 1103 (1995).  The facts clearly must support a finding that immediate and irreparable injury will result to the movant if preliminary relief is denied.  United States v. Stazola, 893 F.2d 34, 37 n.3 (3d Cir. 1990).  The plaintiff bears the burden of establishing a "clear showing of irreparable injury."  Hohe v. Casey, 868 F.2d 69, 72 (3d Cir. 1989), *cert. denied*, 493 U.S. 848 (1989); ECRI, 809 F.2d at 226 (it is not enough to merely show irreparable harm: the plaintiff has the burden of showing immediate irreparable injury, which is more than merely serious or substantial harm and which cannot be redressed with money damages).  Absent a showing of immediate, irreparable injury, the court should deny preliminary injunctive relief.  Acierno, 40 F.3d at 655.

Moreover, in the prison context, a request for injunctive relief "must always be viewed with great caution because 'judicial restraint is especially called for in dealing with the complex and intractable problems of prison administration.'"  Goff v. Harper, 60 F.3d 518, 520 (8th Cir. 1995) (quoting Rogers v. Scurr, 676 F.2d 1211, 1214 (8th Cir. 1982)).  Where a plaintiff requests an injunction that would require the Court to interfere with the administration of a prison, "appropriate consideration must be given to principles of federalism in determining the availability and scope of equitable relief."  Rizzo v. Goode, 423 U.S. 362, 379 (1976).  The federal courts are not overseers of the day-to-day management of prisons.  Prison officials require broad discretionary authority as the "operation of a correctional institution is at best an extraordinarily difficult undertaking."  Wolff v. McDonnell, 418 U.S. 539, 566 (1974).  Accordingly, prison administrators should be accorded wide-ranging deference in the adoption and execution of policies and practices that are needed to preserve internal order and to maintain

institutional security.  Beard v. Banks, 126 S. Ct. 2572, 2578 (2006); Bell v. Wolfish, 441 U.S. 520, 527 (1979).

**III. Analysis**

With the above considerations in mind, Plaintiff has not demonstrated that preliminary injunctive relief is warranted in this case.

First, the majority of Plaintiff's lawsuit concerns conditions of confinement at SCI-Pine Grove and the only Defendant from SCI-Houtzdale is Sgt. Yeager, whom Plaintiff claims engaged in religious and racial harassment in March 2011.  Plaintiff, however, seeks an injunction against officials at SCI-Houtzdale who are not named as defendants in this lawsuit.  Therefore, Plaintiff has not shown a reasonable probability of success on the merits against these individuals because they are not defendants in this action and there are no claims pending against them.  This is an impermissible basis for seeking injunctive relief[1] as the issuance of a preliminary injunction is to preserve the *status quo* and prevent irreparable harm until the court has an opportunity to rule on the merits of the pending lawsuit.  See Acierno v. New Castle County, 40 F.3d 645, 647 (3d Cir. 1994).

Alternatively, even if the Court were to assume that Plaintiff's requests regarding preliminary injunction were sufficiently related to this lawsuit and the individuals against whom

---

[1] *See*, *e.g.*, Devose v. Herrington, 42 F.3d 470, 471 (8th Cir. 1994) (finding that because plaintiff's motion was based on new assertions of mistreatment that are entirely different from the claim raised and the relief requested in the original lawsuit, they cannot provide the basis for a preliminary injunction); Grim v. Smith, No. 1:07cv144, 2012 U.S. Dist. LEXIS 29341, at *2-3 (E.D. Tex. Feb. 13, 2012) (report and recommendation denying TRO because plaintiff sought preliminary injunction against non-defendants and also failed to demonstrate irreparable harm), adopted at 2012 U.S. Dist. LEXIS 29322 (E.D. Tex. March 6, 2012); Spencer v. Stapler, No. 04-1532, 2006 U.S. Dist. LEXIS 50940, 2006 WL 2052704, *9 (D. Ariz. July 21, 2006) (denying plaintiff's motion for injunctive relief because it concerns events that are unrelated to the subject of his complaint and concerns conduct of persons other than the named defendants); Williams v. Platt, 2006 U.S. Dist. LEXIS 3169, 2006 WL 149124, *2 (W.D. Okla. Jan. 18, 2006) (concluding that "[a] preliminary injunction would be inappropriate to address wrongs wholly unrelated to the complaint"); Westbank Yellow Pages v. BRI, Inc., No. 96-1128, 1996 U.S. Dist. LEXIS 6785, 1996 WL 255912, *1 (E.D. La. May 13, 1996) (determining that a preliminary injunction is not an appropriate vehicle for trying to obtain relief that is not sought in the underlying action).

he is currently seeking an injunction were defendants in this action, his Motion would still fail because he is unable to show immediate irreparable injury, a prerequisite for the issuance of preliminary injunctive relief. The case law provides some assistance in determining that injury which is irreparable under this standard. "The word irreparable connotes 'that which cannot be repaired, retrieved, put down again, atoned for . . . .'" Acierno, 40 F.3d at 653 (citations omitted). Additionally, "the claimed injury cannot merely be possible, speculative or remote." Dice v. Clinicorp, Inc., 887 F. Supp. 803, 809 (W.D. Pa. 1995). An injunction is not issued "simply to eliminate the possibility of a remote future injury . . . ." Acierno, 40 F.3d at 655 (citation omitted). Plaintiff's allegations fail to show any immediate irreparable injury that is not speculative or remote.

Additionally, Plaintiff has not demonstrated a reasonable probability of success on the merits even if such claims were included within his complaint against Captain Brumbaugh, Lt. Shea, Lt. Horton, Deputy Close, and Ms. Chencharick. Defendants maintain that Plaintiff is fabricating these incidents in an attempt to force his transfer from SCI-Houtzdale, something that Plaintiff has previously requested from the Court on multiple occasions. (ECF No. 53 at 4.) In support of their position, they have submitted the affidavit of Captain Brumbaugh who maintains that he, Lt. Shea, and Lt. Horton have neither seen nor talked to Plaintiff since the video conference hearing held in this case on April 6, 2012, and that the meeting in the Security Office that Plaintiff describes simply did not happen. (ECF No. 53-2 at ¶ 2.) Moreover, he states that he was not aware, nor would he have any reason to be aware, that Plaintiff filed a grievance against Ms. Chencharick. Id. at ¶ 3.

Defendants have also submitted the affidavit of Deputy Close, who likewise maintains that the meeting in the Security Office did not happen. (ECF No. 53-3 at ¶ 2.) Deputy Close

states that he never threatened, confronted, or touched Plaintiff and certainly has never choked or raped him or anyone else. Id. at ¶ 2(a). He confirmed with the Security Office that Plaintiff was not brought into the office that day, or any other day in the last few months, and facility records indicate that Captain Brumbaugh and Lt. Shea were not even working or present in the facility on that day. Id. at ¶ 2(b). Moreover, he contends that he would never be part of an inmate interview conducted by Security Staff, and if he did have occasion to stop in the Security Office while an inmate was being interviewed, he would immediately leave. Id. at ¶ 2(c). Deputy Close states that his only contact with Plaintiff would be during the course of weekly rounds in the RHU where he goes door to door to speak with the inmates in order to address any questions or concerns they may have. Id. at ¶ 3. He states that if he did speak with Plaintiff during one of those rounds, he would not have any physical contact with him. Id. Like Captain Brumbaugh, he also maintains that he was unaware that Plaintiff had filed a grievance against Ms. Chencharick and would have no reason to know about any such grievance. Id. at ¶ 6.

With respect to Plaintiff's allegations that Ms. Chencharick retaliated against him by either shredding or throwing away his Amended Complaint, Defendants maintain that Plaintiff's story is completely fabricated as well. At the video conference hearing held on April 6, 2012, the undersigned directed Plaintiff to complete his Amended Complaint and notify the RHU Lieutenant on duty. See ECF No. 47. The Lieutenant would then contact Ms. Chencharick so that she could pick up the pleading and see to it that it was mailed, as Plaintiff had been complaining that his legal mail was not being mailed to the Court. Id. The deadline for filing his Amended Complaint was April 30, 2012. Id. Defendants maintain that Ms. Chencharick was never contacted by the RHU Lieutenant and was never advised that Plaintiff had his Amended Complaint ready to mail. Moreover, Defendants maintain that Plaintiff never provided his

Amended Complaint directly to Ms. Chencharick as he claims, even though that was not consistent with the Court's instructions. Plaintiff filed a grievance against her on May 9, 2012, claiming that she had destroyed it in retaliation for a previous grievance he had filed against her. (ECF No. 53-1 at 2-3.)  This grievance was investigated and denied.  (ECF No. 53-1 at 5.) Plaintiff's appeal was also denied. (ECF No. 53-1 at 6.)

Given the evidence in the record at this time, Plaintiff has simply not carried his burden of demonstrating an entitlement to the extraordinary relief of an injunction because it is likely that such claims would not succeed even if they were properly before the Court.  His Motion will be denied accordingly.

**IT IS HEREBY ORDERED** that Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction (ECF No. 52) is **DENIED**.

**AND IT IS FURTHER ORDERED** that in accordance with the applicable provisions of the Magistrate Judges Act, 28 U.S.C. § 636(b)(1)(A), and Rule 72.C.2 of the Local Rules of Court, Plaintiff shall have fourteen (14) days from the date of the service of this Order to file written objections thereto.  Plaintiff's failure to file timely objections will constitute a waiver of his appellate rights.

Dated: September 28, 2012

　　　　　　　　　　　　　　　　　　　　　Lisa Pupo Lenihan
　　　　　　　　　　　　　　　　　　　　　Chief United States Magistrate Judge

cc:  Konata Matthews
　　　EL-4568
　　　SCI Houtzdale
　　　P.O. Box 1000
　　　Houtzdale, PA  16698

　　Counsel of record.