# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| KONATA MATTHEWS | ) | |
| | ) | Civil Action No. 11 – 221J |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Chief Magistrate Judge Lisa Pupo Lenihan |
| | ) | |
| JEFFREY BEARD, *et al.*, | ) | |
| | ) | ECF No. 55 |
| Defendants. | ) | |

## MEMORANDUM OPINION

This case is before the Court on Defendant's Motion to Dismiss Plaintiff's Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). (ECF No. 55.) For the following reasons, the motion will be granted, Plaintiff's claims will be dismissed with prejudice and this case will be closed.

## I. PROCEDURAL HISTORY

Konata Matthews ("Plaintiff") initiated this action in September 2011. In his original Complaint (ECF No. 3) he brought suit under 42 U.S.C. §§ 1981, 1983, alleging that Defendants violated his federal constitutional rights, various state tort laws and several state and federal criminal statutes. He sued the following individuals in their individual capacities: Jeffrey Beard (former Secretary of the Pennsylvania Department of Corrections), Judy Smith (Superintendent's Assistant and Grievance Coordinator at SCI-Pine Grove), Susan Myers (CHCA at SCI-Pine Grove), T. Bearer (Correctional Food Service Manager at SCI-Pine Grove), Carol Zubur (Mail Inspector Supervisor at SCI-Pine Grove), Mark Thomas (Security Lieutenant at SCI-Pine

1

Grove), E.D. Yeager (Correctional Officer at SCI-Houtzdale), and Jaime B. Boyd (Assistant Counsel of the Governor's Office of General Counsel). Defendants filed a Motion to Dismiss (ECF No. 18), which the Court granted on June 14, 2012 (ECF No. 50). As a result, the majority of Plaintiff's claims were dismissed with prejudice including his claims against Defendants Beard, Thomas and Boyd. Plaintiff, however, was granted leave to file an Amended Complaint in order to attempt to state a claim with regard to several of his claims. Plaintiff filed his Amended Complaint on July 13, 2012. (ECF No. 51). Defendants have again filed a Motion to Dismiss. (ECF No. 55.) Although Plaintiff was given an opportunity to respond in opposition to the motion, he filed no response and the time to do so has since expired. As such, Defendants' motion is now ripe for review.

## II. PLAINTIFF'S ALLEGATIONS

Plaintiff alleges that on December 22, 2009, while he was exiting the cafeteria at SCI-Pine Grove, Defendant Bearer, the Food Service Manager, asked if Plaintiff was interested in working in Food Service. (ECF No. 51 at ¶ 13.) When Plaintiff said no, Defendant Bearer stated she was not interested in his employment but instead wanted to have sex with him. Id. Plaintiff alleges that he reported this incident to Security Lieutenant Defendant Thomas who informed Plaintiff that he would speak to Defendant Bearer. Id. at ¶ 14. On December 29, 2009, Defendant Bearer allegedly approached Plaintiff and stated that she hated him "with a passion" and that he had better watch what he eats because she was "gone [sic] prepare a special meal just for you you Islamic nigger." Id. at ¶ 15. The following day, Plaintiff filed a complaint against Defendant Bearer to the DOC's Office of Professional Responsibility ("OPR"). Id. at ¶ 16.

Plaintiff next alleges that he was placed in the infirmary on January 1, 2010, after he was assaulted by three other inmates, and that on January 5, 2010, Defendant Myers, the CHCA,

approached him demanding that he withdraw the grievance he had filed against the physician's assistant for denial of proper health care and racial harassment.  Id. at ¶¶ 17-18.  When Plaintiff refused to do so, Defendant Myers allegedly stated that Plaintiff was in for a "rude awakening," called him a "black bastard" and stated "I hate you Muslims."  Id. at ¶ 18.  Plaintiff alleges that Defendant Myers approached him on January 11, 2010, and told him that his complaints to OPR "were faxed back to us you stupid Muslims.  I got a hell of a dosage for you nigger."  Id. at ¶ 20.

Next, Plaintiff alleges that on January 12, 2010, Defendant Zubur delivered mail to the infirmary and handed Plaintiff his Final Call religious newspaper with a swastika drawn on it.  Id. at ¶ 21.

Plaintiff alleges that on January 14, 2010, while still in the infirmary, he told Defendant Myers that he had not yet received his breakfast tray.  Id. at ¶ 22.  Defendant Bearer subsequently retrieved a breakfast tray but instead of delivering it to Plaintiff she took it into Defendant Myers' office.  When Defendant Bearer came out of Defendant Myers' office a few minutes later and delivered the tray to Plaintiff, he immediately noticed some "tablets" mixed into his Rice Krispies cereal.  Id.  The next day, Plaintiff sent five of the nine tablets from his cereal to a nurse who told him they were nitroglycerin tablets.  Id. at ¶ 23.  After explaining that they had been mixed in his food the previous day, the nurse informed him that she was going to contact the security office.  Id.

Plaintiff alleges that Defendant Thomas visited him in in the infirmary on January 17, 2010, and requested to review the swastika on his religious newspaper and the nitroglycerin tablets that had allegedly been mixed into his cereal.  Id. at ¶ 24.  Plaintiff states he gave Defendant Thomas the drawing, five of the nine tablets, and a grievance regarding both matters, and Thomas said all the evidence would be held in the security office for investigation.  Id.  He

alleges that, on January 20, 2010, he sent Defendant Smith a request asking whether Defendant Thomas had forwarded his grievance regarding the swastika and tablets but that Defendant Smith failed to respond to his request. Id. at ¶ 25.

Plaintiff filed a motion for a temporary restraining order in a pending case in the Middle District of Pennsylvania[1] regarding the swastika drawing and the nitroglycerin tablets, and he requested that he be transferred to another facility. Id. at ¶ 26. Plaintiff states that he attached the tablets "as evidence," but that they were returned to him by the Clerk's office the following day. Id. at ¶ 27. On February 8, 2010, Defendant Boyd filed a brief in opposition to Plaintiff's motion for temporary restraining order containing, among other things, declarations from Defendants Thomas, Smith, and Myers stating that Plaintiff's allegations were fabricated. Id. at ¶ 28.

Plaintiff alleges that he received another Final Call newspaper with a swastika drawn on it, this time from Defendant Myers on February 15, 2010. Id. at ¶ 29. Plaintiff alleges that Defendant Bearer delivered him his lunch tray on February 19, 2010, on which there was an envelope folded up inside of his Styrofoam cup addressed to Plaintiff with a "happy face" sticker. Id. at ¶ 30. Plaintiff claims that the envelope contained a "death threat" which said "we kill rat-coons." Id. Plaintiff says he "positively identified" the handwriting as Defendant Bearer's. Id.

Plaintiff alleges that Defendant Zubur delivered mail to the infirmary on March 2, 2010, and as she handed him his Final Call newspaper with another swastika drawn on it she allegedly stated "you black ass Muslim monkeys better stop referring to us whites as devils in this sinful paper." Id. at ¶ 31.

---

[1] Matthews v. Beard, No. 09-2234 (M.D. Pa. 2009).

Plaintiff claims he sent a grievance to Defendant Smith on March 3, 2010, which covered, among other things, the nitroglycerin tablets, the swastikas on his papers, and the "death threat" from Defendant Bearer. Id. at ¶ 32. Plaintiff states that Defendant Smith responded on July 1, 2010, and rejected his grievance as untimely. Id.

Plaintiff was placed in the Restricted Housing Unit ("RHU") on March 5, 2010, and on March 8, 2010, Defendant Zubur delivered him his mail. Id. at ¶¶ 33-34. He claims that all three pieces of his mail had confederate flag stickers on them and that his mail from the PA Institutional Law Project had the phrase "die coon we hate Muslims" written on it. Id. at ¶ 34. Plaintiff states that he later identified the handwriting as that of Defendant Smith. Id. According to Plaintiff, he filed a grievance about this incident on March 9, 2010, but Defendant Smith rejected it as untimely. Id. at ¶ 35.

Plaintiff was transferred from SCI-Pine Grove to SCI-Houtzdale on March 10, 2010. Id. at ¶ 36. He filed another complaint with OPR raising the issues with the nitroglycerin tablets, his newspaper, and mail, and was advised by OPR that his allegations of abuse had been thoroughly investigated by the Security Department at SCI-Pine Grove and had been determined to be unfounded. Id. at ¶¶ 37-38.

Finally, Plaintiff alleges that on March 9, 2011, he returned to his cell to find his Final Call newspaper delivered with a Ku Klux Klan sticker on it accompanied by certain racially discriminatory statements. Id. at ¶ 41. Plaintiff claims to have "positively identified" the handwriting on the newspaper as that of Defendant Yeager. Id. Plaintiff later filed a complaint to OPR regarding the incident. Id. at ¶ 42.

## III.    LEGAL STANDARD

A motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of a complaint. Kost v. Kozakiewicz, 1 F.3d 176, 183 (3d Cir. 1993). A complaint must be dismissed for failure to state a claim if it does not allege "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 554, 556 (2007) (rejecting the traditional 12(b)(6) standard set forth in Conley v. Gibson, 355 U.S. 41, 45-46 (1957)); Ashcroft v. Iqbal, 129 S. Ct.1937, 1949 (May 18, 2009) (citing Twombly, 550 U.S. at 555-57).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S. Ct. at 1949 (citing Twombly, 550 U.S. at 556). The Supreme Court further explained:

> The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully.  Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

Id. (citing Twombly, 550 U.S. at 556-57).

In Fowler v. UPMC Shadyside, 578 F.3d 203 (3d Cir. Aug. 18, 2009), the United States Court of Appeals for the Third Circuit discussed its decision in Phillips v. County of Allegheny, 515 F.3d 224, 232-33 (3d Cir. 2008) (construing Twombly in a civil rights context), and described how the Rule 12(b)(6) standard had changed in light of Twombly and Iqbal as follows:

> After Iqbal, it is clear that conclusory or "bare-bones" allegations will no longer survive a motion to dismiss: "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 129 S. Ct. at 1949. To prevent dismissal, all civil complaints must now set out "sufficient factual matter" to show that the claim is facially plausible. This then "allows the court to draw the reasonable inference that the

> defendant is liable for the misconduct alleged." Id. at 1948. The Supreme Court's ruling in Iqbal emphasizes that a plaintiff must show that the allegations of his or her complaints are plausible. *See* Id. at 1949-50; *see also* Twombly, 505 U.S. at 555, & n. 3.

Fowler, 578 F.3d at 210.

Thereafter, in light of Iqbal, the United States Court of Appeals for the Third Circuit in Fowler v. UPMC Shadyside, 578 F.3d 203 (3d Cir. 2009), set forth the following two-prong test to be applied by the district courts in deciding motions to dismiss for failure to state a claim:

> First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. [Iqbal, 129 S. Ct. at 1949]. Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." Id. at 1950. In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to "show" such an entitlement with its facts. *See* Phillips, 515 F.3d at 234-35. As the Supreme Court instructed in Iqbal, "[w]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]'- 'that the pleader is entitled to relief.'" Iqbal, 129 S. Ct. at 1949. This "plausibility" determination will be "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id.

Fowler, 578 F.3d at 210-11.

In addition to the complaint, courts may consider matters of public record and other matters of which a court may take judicial notice, court orders, and exhibits attached to the complaint when adjudicating a motion to dismiss under Rule 12(b)(6). Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1384 n.2 (3d Cir. 1994) (citing 5A Wright and Miller, *Federal Practice and Procedure: Civil 2d,* § 1357; Chester County Intermediate Unit v. Pennsylvania Blue Shield, 896 F.2d 808, 812 (3d Cir. 1990)). A court may also consider indisputably authentic documents. Spruill v. Gillis, 372 F.3d 218, 223 (3d Cir. 2004); Pension

Ben. Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993); Golden v. Cook, 293 F. Supp.2d 546, 551 (W.D. Pa. 2003) ("[C]ourts are permitted to consider matters of which they may take judicial notice, including records and reports of administrative bodies, and publically available records and transcripts from judicial proceedings 'in related or underlying cases which have a direct relation to the matters at issue.'") (citations omitted).

Finally, a court must employ less stringent standards when considering *pro se* pleadings than when judging the work product of an attorney. Haines v. Kerner, 404 U.S. 519, 520 (1972). When presented with a *pro se* complaint, the court should construe the complaint liberally and draw fair inferences from what is not alleged as well as from what is alleged. Dluhos v. Strasberg, 321 F.3d 365, 369 (3d Cir. 2003). In a section 1983 action, the court must "apply the applicable law, irrespective of whether the *pro se* litigant has mentioned it by name." Higgins v. Beyer, 293 F.3d 683, 688 (3d Cir. 2002) (quoting Holley v. Dep't of Veteran Affairs, 165 F.3d 244, 247-48 (3d Cir. 1999)). *See also* Nami v. Fauver, 82 F.3d 63, 65 (3d Cir. 1996) ("Since this is a § 1983 action, the [*pro se*] plaintiffs are entitled to relief if their complaint sufficiently alleges deprivation of any right secured by the Constitution.") (quoting Higgins, 293 F.3d at 688). Notwithstanding this liberality, *pro se* litigants are not relieved of their obligation to allege sufficient facts to support a cognizable legal claim. *See*, *e.g.*, Taylor v. Books A Million, Inc., 296 F.3d 376, 378 (5th Cir. 2002); Riddle v. Mondragon, 83 F.3d 1197, 2102 (10th Cir. 1996).

## IV. DISCUSSION

Plaintiff raises the following three Counts in his Amended Complaint: (1) Racial Intimidation and Harassment, (2) Religious and Malicious Harassment, and (3) Civil Liability.

### A. Defendants Boyd, Thomas and Beard

As an initial matter, the Court notes that Plaintiff's claims against Defendants Beard, Thomas and Boyd were dismissed with prejudice pursuant to this Court's prior Memorandum Opinion and Order dated June 14, 2012. *See* ECF Nos. 48, 49. Although Plaintiff continues to list these Defendants in the caption and introductory paragraphs of his Amended Complaint, he no longer asserts any claims against these individuals. Consistent with this Court's prior Order, these Defendants will once again be dismissed from this action with prejudice.

### B. Counts I, II and III

In Count I and II, Plaintiff alleges that he was subjected to racial and religious intimidation and harassment by Defendants Bearer, Myers, Zubur, Smith and Yager. The only change in the Amended Complaint is that Plaintiff now states that these actions violated the Eighth and Fourteenth Amendments to the United States Constitution rather than 42 U.S.C. § 1981. In Count III, Plaintiff merely repeats these same allegations of racial and religious harassment and states that each Defendant is liable "under § 1983." For the same reasons stated in this Court's prior Memorandum Opinion and Order dated June 14, 2012, and set forth herein for ease of reference, Plaintiff's claims are still not actionable because the use of words alone, no matter how violent, do not amount to a constitutional violation under 42 U.S.C. § 1983. *See* Burkholder v. Newton, 116 F. App'x 358, 360 (3d Cir. 2004); DeWalt v. Carter, 224 F.3d 607, 612 (7th Cir. 2000); McFadden v. Lucas, 713 F.2d 143, 146 (5th Cir.) ("mere threatening language and gestures of a custodial office[r] do not, even if true, amount to constitutional violations"), *cert. denied*, 464 U.S. 998 (1983); Wilson v. Horn, 971 F. Supp. 943, 948 (E.D. Pa. 1997) (verbal abuse and harassment, although not commendable, does not rise to the level of a constitutional violation), *aff'd*, 142 F.3d 430 (Table) (3d Cir. 1998); Maclean v. Secor, 876 F.

Supp. 695, 698 (E.D. Pa. 1995) (threat by BOP guard to "see to it" that "pieces of s-" like plaintiff would be "taken care of" was not adequate to make out a constitutional claim as "[i]t is well-established that verbal harassment or threats . . . will not, without some reinforcing act accompanying them, state a constitutional claim").

Moreover, religious and racially discriminatory statements, racial slurs and epithets, without more, also do not establish liability under § 1983. *See* DeWalt, 224 F.3d at 612 ("The use of racially derogatory language, while unprofessional and deplorable, does not violate the Constitution."); Williams v. Bramer, 180 F.3d 699, 706 (5th Cir. 1999) ("[A]n officer's use of a racial epithet, without harassment or some other conduct that deprives the victim of established rights, does not amount to an equal protection violation."); Freeman v. Arpaio, 125 F.3d 732, 738 (9th Cir. 1997) (verbal abuse directed at religious and ethnic background does not state a cognizable constitutional violation); Black Spotted Horse v. Else, 767 F.2d 516, 517 (8th Cir. 1985); Shabazz v. Cole, 69 F. Supp. 2d 177, 201 (D. Mass 1999) ("verbal threats, even abusive threats with racial epithets, do not, in the context of prison, violate an inmate's constitutional rights"); Prisoners' Legal Ass'n v. Roberson, 822 F. Supp. 185, 187-89 & n.3 (D. N.J. 1993) (corrections officer's use of racial slurs did not amount to constitutional violation); Wright v. Santoro, 714 F. Supp. 665, 667 (S.D. N.Y. 1989), *aff'd*, 891 F.2d 278 (2d Cir. 1989); Morgan v. Ward, 699 F. Supp. 1025, 1055 (N.D. N.Y. 1988) (use of racial slurs do not support a claim under the Eighth Amendment); Williams v. Pecchio, 543 F. Supp. 878, 879 (W.D. N.Y. 1982) (verbal harassment, including the use of the term "nigger," does not support a Section 1983 claim). Thus, however offensive the language used by Defendants, it does not give rise to a constitutional claim in and of itself, and to the extent Plaintiff's claims are based upon verbal harassment and threats alone, his claims are once again dismissed with prejudice.

Verbal harassment or threats coupled with the threatening use of a weapon and outrageous conduct by prison personnel may indicate a constitutional violation. *See* Northington v. Jackson, 973 F.2d 1518 (10th Cir. 1992) (guard put a revolver to the inmate's head and threatened to shoot); Douglas v. Marino, 684 F. Supp. 395 (D. N.J. 1988) (prison employee threatened an inmate with a knife); Burton v. Livingston, 791 F.2d 97 (8th Cir. 1986) (guard threatened to shoot prisoner).

To the extent Plaintiff alleges that the Defendants' threatening language, coupled with the nitroglycerin tablets in his cereal, is sufficient to state a claim for a constitutional violation, the Court finds that it is not. It is clear that Plaintiff did not ingest the nitroglycerin tablets and therefore he suffered no harm. Instead, he alleges that he discovered the tablets immediately and that he removed them from his cereal and turned them over to prison officials. Taken as true, Plaintiff's allegations do not rise to the level of an Eighth Amendment violation because Defendants' alleged conduct did not deprive him of the "minimal civilized measure of life's necessities." *See* Rhodes v. Chapman, 452 U.S. 337, 347 (1981). In order for Plaintiff to prevail on an Eighth Amendment claim, he must show that he faced a sufficiently serious risk to his health or safety and that Defendants acted with deliberate indifference to his health or safety. *See* Helling v. McKinney, 509 U.S. 25, 35 (1993). In this case, Plaintiff did not swallow the tablets, and, even assuming that he was deprived of his breakfast, this isolated incident of missing one meal did not result in a substantial risk of serious harm to his health or safety. *See* Simmons v. Holt, No. No. 10-771, 2010 U.S. Dist. LEXIS 50660, 2010 WL 2079978 (M.D. Pa. April 29, 2010) (Plaintiff's allegation that defendant spit and put rat poison in his food did not state an Eighth Amendment claim because plaintiff did not eat his food and the isolated incident

did not pose a substantial risk of serious harm to his health or safety.), *adopted by* 2010 U.S. Dist. LEXIS 50630, 2010 WL 2079968 (M.D. Pa. May 21, 2010).

The Court recognizes that Plaintiff was given leave to amend his complaint in order to attempt to state a claim for an equal protection violation with respect to Defendants' use of the alleged racial and religious derogatory language. *See* DeWalt, 224 F.3d at 612, n.3 ("This does not mean, however, that the use of racially derogatory language is without legal significance. Such language is strong evidence of racial animus, an essential element of an equal protection claim.") (citing Williams, 180 F.3d at 706; Bell v. City of Milwaukee, 746 F.2d 1205, 1259 (7th Cir. 1984)). Plaintiff, however, did not do so. In his Amended Complaint, he failed to assert an equal protection claim or describe any new conduct that was racially or religiously motivated and that deprived him of equal protection of the laws. Instead, he continues to base his claim on offensive speech. As noted in the Court's prior Order, where the conduct at issue consists solely of speech, there is no equal protection violation. Consequently, to the extent Plaintiff attempts to raise an equal protection claim, it will be dismissed with prejudice.

## V. CONCLUSION

For the reasons stated herein, Defendants' Motion to Dismiss Plaintiff's Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) (ECF No. 55) will be granted. Plaintiff's claims will be dismissed with prejudice and this case will be closed. A separate order will follow.

Dated: March 27, 2013

_____
Lisa Pupo Lenihan
Chief United States Magistrate Judge

cc: Konata Matthews
EL-4568
SCI Houtzdale
P.O. Box 1000
Houtzdale, PA 16698

Counsel of Record